

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

AUG 2 4 2005

Michael N. Milby, Clerk

| | | |
|---|---|---|
| AMANULLAH KHAN, DANISH SHAKIR OMER KAMAL, and HEATH RICHARD | § § § | |
| Plaintiffs | § § | |
| v. | § § | CIVIL ACTION NO. H-05 2995 |
| HOUSTON NFL HOLDINGS, L.P., CITY OF HOUSTON, RONALD J. BORZA, ANTHONY CARROLL, GERARDO GUTIERREZ, and BRADLEY RUDOLPH | § § § § § § | |
| Defendants | § | **JURY DEMANDED** |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Amanullah Khan ("Khan"), Danish Shakir ("Shakir"), Omer Kamal ("Kamal"), and Heath Richard ("Richard") file this Plaintiffs' Original Complaint against the City of Houston ("City" or "Houston"), Houston NFL Holdings, L.P. (the "Texans"), Ronald J. Borza, Anthony Carroll, Gerardo Gutierrez and Bradley Rudolph.

## INTRODUCTION

1.      This action arises from the vicious, unprovoked and unjustifiable assault of Khan, Shakir, Kamal, and Richard by Houston Police Officers Ronald J. Borza ("Borza"), Anthony Carroll ("Carroll"), Gerardo Gutierrez ("Gutierrez"), and Bradley Rudolph ("Rudolph"). The officers performed these vicious acts while working as security guards for the Texans.

## JURISDICTION

2.      This Court has subject matter jurisdiction over this action because Plaintiffs assert claims pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983. Procedurally, Plaintiffs' claims are brought pursuant to 28 U.S.C.

§§ 1331, 1343(a)(1)-(4).  This Court has personal jurisdiction over Defendants because they reside and committed the acts forming the basis of this Complaint within the judicial district of this Court.

**VENUE**

3.      Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants reside, and Plaintiffs' claims arose, within the judicial district of this Court.

**PLAINTIFFS**

4.      Plaintiff Amanullah Khan is an individual over eighteen years of age and resides in Harris County.

5.      Plaintiff Danish Shakir is an individual over eighteen years of age and resides in Harris County.

6.      Plaintiff Omer Kamal is an individual over eighteen years and resides in Harris County.

7.      Plaintiff Heath Richard is an individual over eighteen years of age and resides in Harris County.

**DEFENDANTS**

8.      Defendant City of Houston, Texas is an incorporated municipality of the State of Texas, situated in Harris County, Texas.  The City may be served with process by serving the City Secretary, Anna Russell, at the City Secretary's Office, City of Houston, P.O. Box 1562, Houston, Texas 77251-1562.

9.      Defendant Houston NFL Holdings, L.P. is a Delaware limited partnership with its principal place of business in Houston, Texas and may be served with process through its

registered agent for service of process, CT Corporation System, 1021 Main Street, Suite 1150, Houston, Texas 77002.

10.     Defendant Ronald J. Borza (HPD employee number 95918) is an individual residing and employed in Houston, Texas.  He may be served with process at his place of residence, 4615 Saint Andrews Drive, Baytown, Texas 77521.  Borza is sued in his individual capacity.

11.     Defendant Anthony Carroll (HPD employee number 120431) is an individual residing and employed in Houston, Texas.  He may be served with process at his place of employment, 2202 St. Emanuel, Houston, Texas 77004.  Carroll is sued in his individual capacity.

12.     Defendant Gerardo Gutierrez (HPD employee number 120449) is an individual residing and employed in Houston, Texas.  He may be served with process at his place of employment 3202 South Dairy Ashford, Houston, Texas 77082.  Gutierrez is sued in his individual capacity.

13.     Defendant Bradley Rudolph (HPD employee number 71523) is an individual residing and employed in Houston, Texas.  He may be served with process at his place of employment, 1200 Travis, Suite 401, Houston, Texas 77002.  Rudolph is sued in his individual capacity.

## FACTS

**While at the Annual Halloween Bash, Two Texans' Security Guards, Carroll and Gutierrez, Force Richard off the Stage**.

14.     On October 29, 2004, Kamal, Khan, Shakir, and Richard attended the Houston Texans Cheerleaders Halloween Bash ("Event"), which was held by the Texans at Reliant Stadium.  Plaintiffs had agreed to meet at the Event and leave together when they decided it was

3

time to go.  Shakir and Khan arrived at the Event together at approximately 11:00 p.m.   Richard and Kamal met Khan and Shakir inside Reliant Stadium at approximately 11:10 p.m.

15.      During the Event, the Texans made a stage available for the Event-goers to dance. Richard was one of the many individuals who got on the stage and danced.  Because of the warm temperature at the Event's staging area, which was enhanced by the large group of people dancing in close proximity to one another, Richard removed his shirt in an attempt to cool off. At that point, Carroll and Gutierrez, who were providing security for the Event (extra jobs approved by Houston Police Department), approached Richard and directed him to put his shirt back on.   Richard complied immediately and without objection, at which point Carroll and Gutierrez physically forced him off the stage and out of the Event's staging area.

**After  Carroll  and  Gutierrez  Ejected  Richard  From  the  Stadium,  They  Violently Confronted Khan, Kamal and Shakir.**

16.      Upon seeing Carroll and Gutierrez roughly removing Richard from the Event's staging area, Kamal, who had given Richard a ride to the Event, decided to follow Carroll and Gutierrez so he could leave with Richard.  Because Khan and Shakir had agreed to leave with Kamal and Richard, and out of concern for the events that were transpiring, Kahn and Shakir started to leave with Kamal.  So the three men began exiting the Event staging area in the same direction that Gutierrez and Carroll had taken Richard.   But they made sure to keep some distance between themselves and Gutierrez and Carroll to avoid being perceived as threatening or provoking Gutierrez and Carroll.

17.      While Carroll and Gutierrez ejected Richard from the Event's staging area, Richard made no effort to resist or provoke Carroll or Gutierrez.  They took him down an escalator, to a platform, then down another escalator, and finally out of Reliant Stadium, abusing him physically and verbally the entire time.  Kamal, Khan and Shakir followed at a distance until

4

they reached the top of the first escalator, where Campbell, another Houston Police Officer working security for the Event, told Kamal, Khan and Shakir that they should not go down the escalators.  Kamal, Khan and Shakir explained to Campbell that Richard was part of their group and they simply wanted to leave without causing any trouble.  Campbell reluctantly allowed them to pass.

18.   As Kamal, Khan and Shakir made their way down the first escalator, Richard was already exiting Reliant Stadium and Carroll and Gutierrez were coming up the other escalator. The two groups met at the platform between the two escalators.  Upon seeing Kamal, Khan and Shakir, Carroll and Gutierrez turned their aggression on the young men.  Carroll and Gutierrez started asking Kamal, Khan and Shakir if they were with Richard and then grabbed them by the clothing, shoving them toward the second escalator.  Carroll grabbed Khan by the shirt collar, pulled him forward, and got between him and Kamal and Shakir.  At that point, either Carroll or Gutierrez started shoving and striking Khan with his baton toward the second escalator, and the other of the two shoved Shakir with such force that Shakir almost tumbled down the second escalator, barely managing to catch himself to avoid significant injury.  Kamal was also coerced onto the second escalator by Carroll and Gutierrez.

**Without Reason or Explanation, Carroll and Gutierrez Hit and Insulted the Young Men As the Guards Led Them To A Place Where More Security Guards Were Waiting.**

19.   As they proceeded down the second escalator, Carroll and Gutierrez continued striking Kamal, Khan and Shakir and referring to them with racial epithets.  All the while, Kamal, Khan and Shakir tried to explain to the officers that they were trying to leave and did not want to cause trouble.  Nevertheless, the officers continued to hurl profanity and racist insults at the young men in an attempt to provoke them.  Once Kamal, Khan and Shakir reached the

bottom of the second escalator, they were forced out of Reliant Stadium and followed by Carroll and Gutierrez, who told Khan, Kamal and Shakir to "go back to Third Ward."

20.     Khan, Shakir, and Kamal then found themselves outside Reliant Stadium, facing Kirby Drive near the Murworth intersection, where Richard was waiting for them. Several more security guards wearing Houston Police Department uniforms were also waiting for Khan, Shakir and Kamal outside.

**Borza Is More Than Just Another Security Guard for the Texans**

21.     Among the guards waiting outside was Borza, who enjoys a high position within the Texans' security hierarchy. Upon information and belief, Borza's job for the Texans includes coordination of field security, locker room security for home and visiting teams, escorting referees and cheerleaders on and off the field, providing security for the players and coaches, working as traveling security for the Texans when they travel, and personal responsibility for the security of David Carr.

**Borza Signaled to the Rest of the Texan's Security Guards, and They All Ran Toward Kamal, Khan, Shakir and Richard With the Intent to Harm.**

22.     As Borza walked towards Khan, Shakir and Kamal, Khan walked over to tell Borza what had transpired. But Borza started insulting and yelling profanity at Khan, Shakir and Kamal in an attempt to provoke a confrontation. Again, Kamal, Khan and Shakir attempted to explain that they were not trying to cause any trouble and simply wanted to leave. And because the Plaintiffs had done nothing wrong and were not being detained, they decided to leave. As they walked off, Borza continued yelling at and insulting the Plaintiffs, still attempting to provoke them.

23.     Understandably upset, Khan yelled back at the group of guards as he walked away, heatedly telling them that what they had done was not right. Richard joined Khan, Kamal

and Shakir, who were crossing the intersection of Kirby and Murworth.  When Khan, Kamal, Shakir and Richard reached the other side of the street, Borza signaled Carroll, Gutierrez and the rest of their group (the "Guards").  Immediately, the men ran at Khan, Kamal, Shakir and Richard.  As they ran toward the Plaintiffs, the Guards drew their batons.

**Without Provocation, the Texans Security Guards Insulted and Severely Beat Khan, Kamal, Shakir and Richard, Repeatedly Hitting Them With Nightsticks, Punching and Kicking Them, and Even Running One of Them Head-First Into a Light Pole**.

24.    Seeing that the Guards were running towards them with their batons out, Kamal, Khan, Shakir and Richard did what they could to avoid a physical confrontation.  Richard knelt on the ground and placed his hands behind his head.  Nevertheless, a Guard struck Richard in the back of the head with his baton, causing Richard to fall forward.  And the Guard continued striking Richard in the upper and lower back, then handcuffed him and left him lying in an ant pile.  Shakir simply kept walking and did not turn around, to avoid being perceived as making a threatening or confrontational action.  Still, Carroll grabbed Shakir by the back of the shirt and slammed him head-first into a light post, opening a large gash in his head and nearly rendering him unconscious.  Kamal saw what happened to Shakir and immediately dropped to the ground, lying face down with his hands behind his head.  Nevertheless, Rudolph repeatedly struck Kamal in the back of the head and shoved his face into the ground.  Borza ran at Khan and struck him in the back of his left leg with his baton.  Khan fell to the ground and tried to cover his head with his hands.  But Borza continued the assault, striking Khan in the face repeatedly with his fists.  When Khan tried to get into a protective position, Borza twisted Khan's arm behind his back and continued striking Khan in the face.

**Though Khan, Kamal, Shakir and Richard Repeatedly Requested Medical Attention, the Texans Security Guards Refused to Call for an Ambulance or Provide Assistance of any Kind.**

25.      Once the Guards had beaten and handcuffed Khan, Kamal, Shakir and Richard, they taunted them with insults.  When the Guards learned Khan, Kamal and Shakir's ethnic backgrounds, they started referring to the young men as "Osama" and "Saddam."  The Guards also repeatedly called all four Plaintiffs "bitches" for not fighting back.  And though Khan and Shakir obviously needed and requested medical attention, the Guards refused to call an ambulance.

26.      Eventually, on-duty Houston Police officers ("Officers") arrived on the scene to assist with the arrest and transportation of Khan, Kamal, Shakir and Richard.  The Officers placed Kamal and Richard in one squad car and Khan in another.  Richard and Kamal then learned that the Officers planned to charge the Plaintiffs with "public intoxication."  But none of the Plaintiffs had been drinking that night.  So as they were being arrested, Richard and Kamal repeatedly requested a breathalyzer test to prove they were not intoxicated.  The HPD officers refused.

**Shakir Was Drenched In His Own Blood, and a Doctor Examined Khan, Refused to Admit Him Into the Jail, Sending Him to the Hospital, Instead.**

27.      Apparently seeing Shakir drenched in his own blood, the Officers called for an ambulance.  Paramedics arrived and tended to Shakir's injuries, including the two-inch gash on his head.  Khan informed the Officers of his injuries, including a broken nose, and requested medical attention.  Despite his obvious injuries, the Officers refused to let Khan be taken to a hospital or get medical attention from the paramedics, taking him to the Mykawa jail facility, instead.  Upon arriving at the Mykawa facility, a doctor examined Khan and refused to admit

him into the jail. Finally, Khan was transported to a hospital, where he was diagnosed with a broken nose and head trauma, in addition to extensive bruising and several cuts.

28.     Notably, Khan was not charged with a crime and the public intoxication charges against Shakir were dismissed.

## CAUSES OF ACTION

### Assault by Infliction of Bodily Injury

29.     Borza, Gutierrez, Carroll, and Rudolph repeatedly, intentionally and unjustifiably struck the Plaintiffs. As a result of their conduct, Borza, Gutierrez, Carroll and Rudolph caused bodily injury to Plaintiffs. Such conduct constitutes Assault by Infliction of Bodily Injury, for which the Plaintiffs sue Borza, Gutierrez, Carroll and Rudolph in their individual capacities.

### False Imprisonment

30.     Borza, Gutierrez, Carroll and Rudolph willfully detained the Plaintiffs without their consent. Borza, Gutierrez, Carroll and Rudolph acted knowingly or recklessly and without justification. Such conduct constitutes false imprisonment, for which the Plaintiffs sue Borza, Gutierrez, Carroll and Rudolph in their individual capacities.

### Defamation

31.     Borza, Gutierrez, Carroll and Rudolph accused the Plaintiffs of a crime by stating that the Plaintiffs were publicly intoxicated. Those accusations were published to third parties both orally and in writing, and they were false. When making the accusations, Borza, Gutierrez, Carroll and Rudolph were acting with actual malice or negligent. Such conduct constitutes defamation per se, for which the Plaintiffs sue Borza, Gutierrez, Carroll and Rudolph in their individual capacities.

### Intentional Infliction of Emotional Distress

32.     Borza, Gutierrez, Carroll and Rudolph intentionally and repeatedly struck and insulted the Plaintiffs.  That conduct was extreme and outrageous.   Borza, Gutierrez, Carroll and Rudolph's conduct proximately caused and will continue to cause the Plaintiffs extreme emotional distress and mental pain and anguish.  Such conduct constitutes intentional infliction of emotional distress, for which the Plaintiffs sue Borza, Gutierrez, Carroll and Rudolph in their individual capacities.

### Civil Conspiracy

33.     Borza, Gutierrez, Carroll and Rudolph were members of a combination of two or more persons.  The purpose of the combination was to accomplish the unlawful assault, false imprisonment, and defamation of and intentional infliction of emotional distress on the Plaintiffs. Borza, Gutierrez, Carroll and Rudolph had a meeting of the minds on their objective and course of action.  The Plaintiffs suffered bodily injury, extreme emotional distress and mental pain and anguish as a result of Borza, Gutierrez, Carroll and Rudolph's conduct.  Such conduct constitutes civil conspiracy, for which the Plaintiffs sue Borza, Gutierrez, Carroll and Rudolph in their individual capacities.

### Vicarious Liability

34.     The Texans hired Borza, Gutierrez, Carroll and Rudolph to provide security for the Event.  Because Borza, Gutierrez, Carroll and Rudolph committed the intentional torts of assault by infliction of bodily injury, false imprisonment, defamation, intentional infliction of emotional distress, and civil conspiracy while in the course and scope of providing the security services for which the Texans hired them, the Texans are vicariously liable to the Plaintiffs for the intentional torts of Borza, Gutierrez, Carroll and Rudolph.

**Negligent and/or Gross Negligence**

35.     On information and belief, the Texans' decision to hire Borza, Gutierrez, Carroll and/or Rudolph was based on the personal relationship(s) between Borza, Gutierrez, Carroll and/or Rudolph and members of the Texans' organization, rather than on the qualifications, experience and history of Borza, Gutierrez, Carroll and/or Rudolph.  On information and belief, had the Texans exercised reasonable care and reviewed the qualifications, they would have discovered that the conduct of Borza, Gutierrez, Carroll and/or Rudolph, of which the Plaintiffs complain, was likely to occur.  Therefore, the Texans acted negligently when they hired Borza, Gutierrez, Carroll and/or Rudolph.

36.     Alternatively and on information and belief, the Texans were aware of the qualifications, experience and history of Borza, and that such qualifications, experience and history made it likely that the conduct of Borza, Gutierrez, Carroll and/or Rudolph was likely to occur.  Despite the danger that such conduct posed to others, the Texans proceeded with conscious indifference to the welfare of others.  Therefore, the Texans acted with gross negligence when they hired Borza, Gutierrez, Carroll and/or Rudolph.

37.     Whether the Texans failed to check the qualifications, experience and history of Borza, Gutierrez and/or Rudolph or did check and know of such qualifications, experience and history, the Texans should have exercised greater supervision due to such knowledge or lack of knowledge.  On information and belief, the Texans essentially exercised no supervision over Borza, Gutierrez, Carroll and/or Rudolph.  Such conduct by the Texans constitutes either negligence or gross negligence.

38.     As a direct and proximate result of the Texans' negligence and/or gross negligence in their hiring and supervision of Borza, Gutierrez, Carroll and/or Rudolph, the

Plaintiffs sustained physical injuries, extreme emotional distress, and mental pain and anguish. Therefore, the Plaintiffs sue the Texans for negligence and gross negligence.

### Violation of Civil Rights

39.     On information and belief, the City of Houston, acting under color of law and through its policy makers, has established an official policy and/or custom and practice whereby Houston police officers who are accused of and/or engage in misconduct are not adequately investigated, disciplined, supervised and/or trained.  On information and belief, the City of Houston, acting under color of law and through its policy makers, has established an official policy and/or custom and practice of permitting off-duty police officers to work "approved extra jobs" while in the uniform of the Houston Police Department, even if those police officers have been accused of and/or engaged in misconduct.  Therefore, the City of Houston, acting under color of law and through its policy makers, intentionally, knowingly, recklessly, negligently, and/or with deliberate indifference, places the rights of the inhabitants of the City of Houston in peril.

40.     On information and belief, Borza, Gutierrez, Carroll and/or Rudolph have been accused of and/or engaged in misconduct, for which the City of Houston has not adequately investigated, disciplined, supervised and/or trained them.  On information and belief, the City of Houston failed to investigate, discipline, supervise and/or train Borza, Gutierrez, Carroll and/or Rudolph.  As a consequence of the City of Houston's conduct, uniformed, off-duty Houston police officers who were working approved extra jobs that they obtained, in part, because of their employment with the Houston Police Department, assaulted, false imprisoned, defamed and intentionally inflicted emotional distress on the Plaintiffs.  Therefore, pursuant to 42 U.S.C. § 1983, the Plaintiffs sue the City of Houston because the City of Houston failed to train, instruct,

supervise and discipline Defendants Borza, Gutierrez, Carroll and Rudolph, as well as other officers of the Houston Police Department.

## Damages

41.     As a result of Defendants' negligent, grossly negligent and/or intentional conduct, Plaintiffs suffered bodily injury.  Also as a result of Defendants' negligent, grossly negligent and/or intentional conduct, Plaintiffs have suffered and will continue to suffer emotional distress and mental pain and suffering.  Consequently, Plaintiffs seek actual and exemplary damages as a result of the Defendants' conduct.

## Attorney's Fees & Interest

42.     The Plaintiffs seek attorney's fees because the laws of equity demand as much. Texas law allows for the recovery of attorney's fees in the interests of justice. *See Knebel v. Capital Nat'l Bank,* 518 S.W.2d 795, 799 (Tex. 1974). Considering the Defendants' intentional, grossly negligent and negligent conduct, the interests of justice require that the Defendants pay the Plaintiffs their reasonable and necessary attorney's fees.

43.     Additionally, the Plaintiffs seek their reasonable and necessary attorney's fees incurred in the prosecution of their claims against the City of Houston pursuant to 42 U.S.C. 1988.

44.     The Plaintiffs also seek pre-judgment and post-judgment interest.

## CONDITIONS PRECEDENT

45.     All conditions precedent have been performed by the Plaintiffs or have occurred as required by law.

## **PRAYER**

46.    Plaintiffs pray that Defendants be cited to appear and answer and that upon final

hearing, Plaintiffs have judgment against the Defendants for:

       (a)    Actual damages;

       (b)    Punitive damages

       (c)    interest before and after judgment as provided by law;

       (d)    reasonable and necessary attorney's fees;

       (e)    costs of suit; and

       (f)    all other and further relief to which the Plaintiffs are justly entitled.

Respectfully submitted,

BORUNDA & HAMDANI, LLP

By: _____
      Jorge Borunda
      Texas Bar No. 24027205
      Alamdar S. Hamdani
      Texas Bar No. 24012771
3700 Buffalo Speedway, Suite 530
Houston, Texas  77098
Tel. No. (713) 850-1070
Fax No. (713) 850-1730

**ATTORNEYS FOR PLAINTIFFS**

14

JS 44   (Rev. 11/04)

# CIVIL COVER SHEET H-05 2995

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Amanullah Khan, Danish Shakir, Omer Kamal, and Heath Heath Richards

**DEFENDANTS**

Houston NFL Holdings, L.P., City of Houston, Ronald J. Borza, Anthony Carroll, Gerardo Gutierrez, and Bradley Rudolph

(b) County of Residence of First Listed Plaintiff     Harris

(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant     Harris

(IN U.S. PLAINTIFF CASES ONLY)

NOTE.  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

United States Courts
Southern District of Texas
FILED

AUG 2 4 2005

Michael N. Milby, Clerk

(c) Attorney's (Firm Name, Address, and Telephone Number)

Borunda & Hamdani, LLP, 3700 Buffalo Speedway, Suite 530
Houston, Texas 77098.   Jorge Borunda & Alamdar Hamdani

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☒ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):  42 U.S.C. 1983

Brief description of cause
Plaintiffs' were physically and verbally assaulted by off duty HPD officers, working security for Houston Texans

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $   10,000,000.00

CHECK YES only if demanded in complaint:

JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)

JUDGE                              DOCKET NUMBER

DATE
8/24/2005

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE